# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00481-CR

**Antonio Natal Juarez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
## NO. CR-03-268, HONORABLE DON B. MORGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Antonio Juarez challenges his conviction by a jury for arson and sentence of twenty-five years' confinement. In four issues, he argues that the trial court erred by failing to provide an instruction on accomplice testimony, that the accomplice testimony was insufficiently corroborated, and that improper evidence was admitted in the punishment stage. We will affirm.

## BACKGROUND

Juarez began dating Rachel Galendo in January 1999. The couple lived together from March 2000 until June 2001. During the relationship, Juarez was jealous when Galendo spoke to other men and physically abused Galendo. Juarez threatened to kill Galendo several times during the relationship. In June 2001, Juarez and Galendo "broke up" but continued to date intermittently.

The night of June 7, 2002, Galendo went to a club with a friend; Juarez was also there with Trine Pastrano. Juarez threatened to kill Galendo after he saw her dancing with another man.[1] Later, Galendo and her friend left the club and went to Galendo's apartment. When they arrived around 1:30 a.m., Galendo saw that her car, a white Ford, was on fire. The fire department had already arrived and was attempting to suppress the fire. Galendo's first thought was that Juarez was responsible.

That night, Ken Bell, fire marshal for the City of San Marcos, began his investigation of the cause of the fire. First, Bell noted that the car "reeked of gasoline" and that the driver's seat suffered the most damage. Attempting to rule out potential causes for the fire, he also observed that the engine was not heavily damaged and that the fuel pump appeared normal. Galendo and others who may have had knowledge regarding the source of the fire were subsequently interviewed, and laboratory tests were conducted. Bell later concluded that someone had poured gasoline into the car and intentionally lit the fire.[2]

Pastrano testified that on the night of the fire, he was riding in Juarez's car when Juarez stopped at a gas station and put two gallons of gas in a plastic red gas can. Pastrano thought

---

[1] Galendo testified that she believed that Juarez would kill her and that it was the same type of threat Juarez had made during their relationship.

[2] Jim Frank Swindell, a criminalist and manager of the State Fire Marshal Arson Lab in Austin, also testified that laboratory tests revealed that gasoline was used as an accelerant to the fire.

Juarez was going to use the gas to mow the lawn the next day. Juarez then told Pastrano that Juarez was going to talk to his girlfriend. They arrived at Galendo's apartment complex, and Juarez went to an apartment and knocked on the door. No one answered. Juarez then returned to the car and removed a tire iron from the trunk and the gas can from his back seat. He walked up to a white Ford, discerned that all of the doors were locked, and smashed the driver's side window with the tire iron. After Juarez poured gasoline into the car, he took a box of matches from his pocket, lit a match, and threw it through the broken window.[3] The car burst into flames. Juarez returned to his car and told Pastrano that he had done it "so she would think I don't fuck around, you know, show her who I am." Pastrano also testified that he was afraid that Juarez would retaliate against him for his testimony.

Juarez was found guilty of arson by a jury. *See* Tex. Pen. Code Ann. § 28.02 (West 2003). After hearing evidence of prior convictions, the court sentenced him to twenty-five years' confinement. This appeal follows.

## DISCUSSION

In four issues, Juarez argues that the trial court erred by refusing his request for an accomplice instruction related to Pastrano, that Pastrano's accomplice testimony was insufficiently

---

[3] Although Pastrano gave conflicting testimony regarding which window was broken, the record reflects a probable language barrier, and it is clear that Pastrano did not initially understand which side of the car was the driver's side and which was the passenger's side.

corroborated, and that facts surrounding his previous conviction were improperly admitted in the punishment hearing.

**Accomplice instruction**

In his first issue, Juarez argues that he was entitled to a jury instruction that Pastrano was an accomplice. At the charge conference, Juarez's attorney requested "an accomplice witness charge. Trine Pastrano has admitted that he was there." The trial court denied the request. Although it is unclear whether Juarez was seeking an instruction that Pastrano was an accomplice as a matter of law or as a question of fact, for purposes of this opinion, we will consider each contention. *See Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).

We review the trial court's submission of jury instructions under an abuse of discretion standard. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). An accomplice participates with a defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Paredes*, 129 S.W.3d at 536; *Kutzner v. State*, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999). The participation must involve an affirmative act that promoted the commission of the offense with which the accused is charged. *Paredes*, 129 S.W.3d at 536. A person who is merely present at the scene of the offense is not an accomplice. *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998) (citing *Creel v. State*, 754 S.W.2d 205 (Tex. Crim. App. 1988)). Additionally, one is not an accomplice for knowing about a crime and failing to disclose it, or even concealing it. *Blake*, 971 S.W.2d at 454. Rather, an accomplice as a matter of law is one

4

who is susceptible to prosecution for the offense with which the accused is charged or a lesser included offense. *Paredes*, 129 S.W.3d at 536; *see Blake*, 971 S.W.2d at 455. Whether the person is actually charged and prosecuted for their participation is irrelevant to the determination of accomplice status—what matters is the evidence in the record. *Blake*, 971 S.W.2d at 454.

The trial court is under no duty to instruct the jury unless there exists no doubt or the evidence clearly shows that a witness is an accomplice as a matter of law. *Paredes*, 129 S.W.3d at 536. If the evidence presented by the parties is conflicting and it is not clear whether the witness is an accomplice, then the trial court must leave to the jury the question of whether the inculpatory witness is an accomplice witness as a matter of fact under instructions defining the term "accomplice." *Id*. (citing *Blake*, 971 S.W.2d at 455).

Bell testified that after speaking to Pastrano, he believed that Juarez was a suspect. Pastrano was ruled out as a suspect; no arrest warrant was ever requested, and Bell unequivocally stated that he concluded that Pastrano did not actively participate in the setting of the fire. In Bell's opinion, Pastrano was merely a witness, not a suspect. Juarez argues that "Bell states that Pastrano admitted to being a co-defendant to the crime." Although Bell listed Pastrano as being "involved" in the arson in the arrest warrant for Juarez, at trial Bell explained that he listed Pastrano "as being involved in the proceedings as they were going on, similar to the way I am right now." Bell also testified that when he interviewed Juarez, Juarez did not implicate Pastrano as a suspect and was "very emphatic about the fact that Mr. Pastrano was not involved in the loss of that vehicle." Finally, Bell testified that during his investigation, no one ever implicated Pastrano.

5

Although Pastrano was present at the time of the arson, there is no evidence to support an assertion that he participated in the arson.[4] Thus, he is not an accomplice as a matter of law because he is not susceptible to prosecution for arson. *See Paredes*, 129 S.W.3d at 537. Additionally, the trial court was under no duty to leave the question of Pastrano's participation as an accomplice as a matter of fact to the jury because there is no conflicting evidence or doubt on the question of his complicity in the arson. *See id*. We overrule Juarez's first issue.

Because we find no evidence that Pastrano was an accomplice, we need not consider Juarez's second issue, which challenges whether Pastrano's alleged accomplice testimony was sufficiently corroborated.

**Improper punishment evidence**

In his third and fourth issues, Juarez argues that the trial court violated the hearsay rule and the confrontation clause by admitting factual evidence surrounding his previous convictions for attempted murder and driving while intoxicated. *See* Tex. R. Evid. 802; *see also* U.S. Const. art. VI. He cites *Johnson v. State*, 650 S.W.2d 784 (Tex. Crim. App. 1983), and *Crawford v. Washington*, 541 U.S. 36 (2004), as support for his arguments. However, the *Johnson* decision construed a previous version of article 37.07 of the code of criminal procedure. *See Johnson*, 650 S.W.2d at 792; *see also* Tex. Code Crim. Proc. Ann. art. 37.07 (West 1981). After the *Johnson* decision, article 37.07 was amended to specify that

---

[4] Juarez also argues that Pastrano was an accomplice because evidence showed he was involved in communicating the threat to Galendo at the club. However, evidence that Pastrano was involved in threatening Galendo would not require an accomplice instruction related to arson.

6

evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2004-05). Thus, the version of article 37.07 applicable at the time of Juarez's trial demonstrated the legislature's "manifest intent that evidence of details of offenses be admissible." *Davis v. State*, 968 S.W.2d 368, 372 (Tex. Crim. App. 1998). The trial court did not violate article 37.07 or abuse its discretion by permitting the details of Juarez's bad acts to be admitted during the punishment phase. *See id*. at 373.

Furthermore, Juarez waived any complaint regarding article 37.07 or his sixth amendment right to confrontation by volunteering the facts of his prior convictions in his own testimony. In the punishment phase, Juarez testified on direct examination that he had been convicted of driving while intoxicated and attempted murder in two separate incidents.[5] In fact, Juarez was on parole from the attempted murder conviction when he committed the arson in this case. On cross-examination Juarez freely admitted, without objection, that he had been convicted of attempted murder after he shot another man in the head with a small caliber pistol. He also

---

[5] Juarez does not argue that his testimony was impelled by the State's introduction of evidence that was obtained in violation of the law or that the harmful effect of allegedly improperly admitted evidence was not cured by the fact that he sought to explain it by introducing rebutting evidence. *See Leday v. State*, 983 S.W.2d 713, 719 (Tex. Crim. App. 1998).

admitted that the man was the driver of a car that bumped into Juarez's brother's car in a parking lot; Juarez did not know him before the incident. We overrule Juarez's third and fourth issues.

## CONCLUSION

Having overruled Juarez's issues, we affirm the conviction.

_____
W. Kenneth Law, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: October 14, 2005

Do Not Publish