**Opinion issued November 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-01005-CR

_____

**HAROLD JOSEPH NORWOOD, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 13CR1311**

---

## MEMORANDUM OPINION

The State charged Appellant, Harold Joseph Norwood, Jr., with murder.[1]

Appellant pleaded not guilty. The jury found him guilty, found two enhancement

paragraphs true, and assessed punishment at 80 years' confinement. In two issues

---

[1]    *See* TEX. PENAL CODE ANN. §§ 19.02(b)(3), 31.07(a)–(b) (Vernon 2011).

on appeal, Appellant argues (1) the trial court erred by not sua sponte instructing the jury on accomplice-witness testimony and (2) the evidence was factually insufficient to support the jury's verdict.

We affirm.

## Background

Juan Navarro was the owner of Navarro Bakery in Galveston, Texas. At 1:59 in the morning on January 26, 2013, Officer E. Ticas was on patrol. He saw a body lying in the parking lot for the bakery. Officer Ticas pulled into the parking lot and found Navarro gravely injured. Navarro was rushed to a hospital. Despite efforts to save him, Navarro died in the evening of that day. Medical examination established that Navarro had multiple abrasions, two broken ribs, and a severe skull fracture. The medical examiner later testified that the injuries would be consistent with the person being in a fight or with driving over the person with a car.

Surveillance video footage from the bakery and nearby businesses show that Navarro's SUV was at the bakery from 12:23 to 1:49 that morning. Video footage from one of the nearby businesses showed a man walking away from the bakery at 1:37. Footage from the same camera showed the man returned to the bakery at 1:41. Two people who knew Appellant later identified to police that Appellant

was the person walking in the footage. Both people based their identification on a distinctive way that Appellant walks, described by both as bowlegged.

During the course of the investigation, Richard Lacy contacted police, informing them that he had information related to the death of Navarro. Lacy testified at trial. He testified that, on the morning of the incident, he was at a neighbor's house in his apartment complex near the bakery. He and some friends had been drinking and taking cocaine. Around 2:00 in the morning, Lacy stepped outside to smoke a cigarette. He saw an SUV approach. The SUV was later identified as Navarro's car that had been with him at the bakery. Lacy saw the car stop at his complex, and Appellant go out of the driver's door. Lacy had met Appellant a few days before the incident and had interacted with him in the intervening time.

Appellant asked Lacy if he knew a place that had a coin-counting machine available at that time. Lacy said a Kroger's on the island had one. The two drove to the Kroger. Video surveillance from the store confirmed their presence there around 2:00 in the morning.

When they arrived, Appellant took a bag of coins into the Kroger's. The two deposited the coins into the machine and obtained over $100 from the register. Lacy threw the bag away inside the store. Appellant told Lacy to get the bag back, and Lacy did.

Lacy drove after they left the Kroger. During that time, Appellant threw the bag out of the car window. While Lacy was driving, Appellant told Lacy that he was "taking a penitentiary chance" by driving the car. Lacy also testified that Appellant may have mentioned "hitting a lick," which can refer to stealing something.

Lacy did not drive the SUV again. Every time Lacy saw Appellant use the car after that, Appellant would wipe down the places he had touched the car with a towel. Sometime later, Lacy saw police locate the car and conduct a crime scene investigation of the car. At that time, Lacy decided to contact the police and tell them about what he knew. Lacy gave the police the clothes he had worn that morning. He also gave them the shoes Appellant had worn that morning. Appellant had borrowed a pair of Lacy's shoes that morning and left his shoes with Lacy.

When Navarro was found, the ground on the parking lot was damp. Next to Navarro, however, was a large dry spot consistent with a car parked at that location. Forensic analysis of the car showed blood on the front driver's side tire and wheel well. A fingerprint of one of Appellant's fingers was found on the car.

Navarro's wife testified that Navarro commonly kept a bag of coins in his car that he would use in relation to his business. Navarro's keys were found next to him in the parking lot. The SUV's key was missing from the keychain,

however. The investigation revealed that Navarro's phone had been used after Navarro had been found. One phone call was traced to Dietrich Simmons. Simmons testified that she got the phone from Appellant.

## Accomplice Witness

In his first issue, Appellant argues the trial court erred by not sua sponte instructing the jury on accomplice-witness testimony for Lacy. The State argues that there is no evidence indicating that Lacy was an accomplice witness.

## A. Standard of Review

If the evidence establishes that a witness is an accomplice witness, the trial court must instruct the jury on accomplice-witness testimony. *Zamora v. State*, 411 S.W.3d 504, 512 & n.4 (Tex. Crim. App. 2013). "If the evidence presented by the parties is conflicting and it is not clear whether the witness is an accomplice, then the trial court must leave to the jury the question of whether the inculpatory witness is an accomplice witness." *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). If there is no doubt that the witness in question is not an accomplice witness, then the "trial court is under no duty to instruct the jury." *Id.* The Court of Criminal Appeals has indicated that we review this determination for an abuse of discretion. *Id.* at 538.

**B.    Analysis**

"[U]nder Texas Code of Criminal Procedure Article 38.14, a conviction cannot stand on an accomplice witness's testimony unless the testimony is corroborated by other, non-accomplice evidence that tends to connect the accused to the offense." *Smith v. State*, 332 S.W.3d 425, 439    (Tex. Crim. App. 2011) (citing TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005)).  "An accomplice is a person who participates in the offense before, during, or after its commission with the requisite mental state." *Id.*

A witness can be an accomplice as a matter of law or as a matter of fact.  *Id.* A witness who has been indicted for the same offense as the defendant, who has been indicted for a lesser-included offense of the defendant's offense, or who agrees to testify against the defendant in exchange for dismissal of an otherwise applicable offense is an accomplice witness as a matter of law.  *Id.*  Otherwise, if the witness has not been charged but there is some evidence that the witness could be charged with the same offense or a lesser-included offense as the defendant, then the witness is treated as an accomplice witness as a matter of fact.  *See id.* at 439–40; *Paredes*, 129 S.W.3d at 536.  The final determination of whether the witness is an accomplice witness is left to the jury, and the jury must be properly instructed. *Paredes*, 129 S.W.3d at 536.

Appellant claims that Lacy was an accomplice witness as a matter of fact. His argument for this claim is contained in one sentence. "In the Appellant's case: the physical evidence of[] blood on Lacey's [sic] shoe, blood on Lacey's finger, recovery of the vehicle on Lacey's street, as well as Lacey's appearance in the Kroger video establishes Lacey as a party conspirator."

When the police talked to Lacy, they took a picture of his right hand. The picture shows a blood clot on his middle finger. There is no indication that the blood was Navarro's. Likewise, blood was found on Lacy's right shoe. Testing revealed that the majority of the DNA in the blood was Lacy's. There was an indication of a "minor component," but the amount was low enough that comparisons could not be made.

There is no indication, let alone proof, in the record that Lacy was present during the incident that resulted in Navarro's death. Video surveillance showed Appellant was present around the time of the incident. The surveillance shows Appellant by himself. No one testified that Lacy was present, and no evidence indicated Lacy's presence. The simple fact that Lacy had a blood clot on his finger and his own blood—mixed with some other source so minor that it could not be identified—on his shoe does nothing to change that analysis. Likewise, the facts that the SUV was found on the street on the same block as Lacy's apartment

complex and that Lacy was with Appellant afterwards in the SUV do not create implications that Lacy was involved in the murder.

Appellant suggests Lacy should be considered an accomplice witness based on the law of parties. "A person is criminally responsible as a party to an offense if the offense is committed . . . by the conduct of another for which [the person] is criminally responsible." TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2011). "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2011). None of the evidence upon which Appellant relies indicates that Lacy intended to promote or assist the commission of the murder or the theft.

We overrule Appellant's first issue.

## Sufficiency of the Evidence

In his second issue, Appellant argues that the evidence was factually insufficient to support the jury's verdict.

## A.    Standard of Review

The Court of Criminal Appeals has annunciated a single standard of review that applies to both legal and factual sufficiency challenges. *See Carmichael v. State*, 416 S.W.3d 133, 135 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("We

8

review legal and factual sufficiency challenges using the same standard of review."). "Under *Brooks v. State*, we review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single sufficiency standard set out in *Jackson v. Virginia*." *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) and *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**B.     Analysis**

The State charged Appellant with murder. *See* TEX. PENAL CODE ANN. § 19.02(b) (Vernon 2011).

> A person commits an offense if he . . . commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

*Id.* § 19.02(b)(3). The felony the State alleged that Appellant committed was unauthorized use of a motor vehicle. *See* TEX. PENAL CODE ANN. § 31.07 (Vernon 2011).

Appellant does not challenge the sufficiency of the evidence to show that he committed the offense of unauthorized use of a vehicle or that driving over Navarro was an act clearly dangerous to human life that caused Navarro's death. In this issue, Appellant focuses on whether the evidence was sufficient to show he was the one at the crime scene that committed the offense. Specifically, Appellant argues "that his driving of the Decedent's vehicle was not sufficient to prove murder or to place him at the scene of the Decedent's death."

The evidence upon which the State sought Appellant's conviction, however, was not limited to the fact that Appellant was later seen driving Navarro's car. Evidence established that Navarro drove to his bakery after midnight. His car remained at the parking lot for over an hour. Surveillance video showed Appellant walking away from the scene around the time in question. Later video footage showed Appellant returning to the scene. Shortly after Appellant returned, video footage shows the car leaving.

Navarro was found lying in the parking lot. His injuries were consistent with someone driving over him with a car. His keys were found next to him, but

his car key was missing. The parking lot was damp except for one car-sized dry spot immediately next to him.

Multiple sources identified Appellant driving the car immediately after the incident at a location very close to the incident. Blood was found on the tire and tire well of the car. Appellant told Lacy that, by driving the car, Lacy was taking a "penitentiary chance," indicating that Appellant knew about criminal activity associated with the car. Likewise, Appellant would regularly try to wipe his finger prints off of the car when he left it.

We hold the evidence is sufficient to support the jury's determination that Appellant was at the scene of the crime and that Appellant was the person who committed the offense. We overrule Appellant's second issue.

**Conclusion**

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).