

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00142-CR

———————————————

ANBROCIO MARIN, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1516425R

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

### I.  Introduction

Appellant Anbrocio Marin made an open plea of guilty to evading arrest or detention with a vehicle, and the trial court sentenced him to eight years' confinement.  *See* Tex. Penal Code Ann. § 12.34 (setting out third-degree felony punishment range as not more than 10 years or less than two years and up to a $10,000 fine), § 38.04(b)(2)(A) (stating that evading arrest is a third-degree felony if the actor uses a vehicle while in flight and has previously been convicted under Section 38.04).

In a single point, Marin complains that the trial court abused its discretion by overruling his *Crawford*[1] objection during his sentencing hearing.  We affirm.

### II.  Factual and Procedural Background

On the morning of June 19, 2017, Euless Police Officer Josh Bennett, who suspected Marin of being a drug dealer, was conducting surveillance of Marin's home. When he saw Marin leave the house with "some sort of bag" and drive away, he followed him and attempted to conduct a traffic stop because Marin's vehicle did not have a front license plate.

---

[1]*Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).  In *Crawford*, the Supreme Court held that the admission of a hearsay statement made by a nontestifying declarant violates the Sixth Amendment if the statement was testimonial when made and if the defendant lacked a prior opportunity for cross-examination.  *Id.* at 68, 124 S. Ct. at 1374.

Instead of stopping, Marin fled, accelerating his vehicle to over 100 miles per hour while Officer Bennett followed him with his vehicle's emergency lights and siren activated. The pursuit was terminated for safety reasons before Marin could be apprehended.

After his eventual arrest, Marin made an "open plea with PSI"[2] to the State's charge of evading arrest or detention with a vehicle, a third-degree felony. At the beginning of the sentencing hearing, the State introduced the PSI, which was admitted without objection,[3] followed by Officer Bennett's and Marin's testimony.

After Officer Bennett testified about why he had identified Marin as a drug-dealing suspect,[4] the following colloquy occurred:

> Q. And so based on the conversations with – how many people did you suspect that determine – determine or suspect this Defendant was involved in illegal drug activity?

---

[2]"PSI" is an abbreviation for a pre-sentence investigation report.

[3]On December 5, 2019, this court ordered that the PSI be delivered to this court when it was not originally included in the appellate record.

[4]Officer Bennett testified that he had become familiar with Marin "[f]rom prior investigations . . . where traffic stops were conducted and he was a passenger in the vehicle or drug-related investigations," and from crime stopper tips, complaints from other investigators, and informants. By June 19, 2017, Officer Bennett had conducted surveillance of Marin's home ten to fifteen times. The PSI added that the Tarrant County Narcotics Intelligence and Coordination Unit had identified Marin as a methamphetamine dealer and that after he was apprehended, Marin sought to have the evading-arrest charge dismissed in exchange for divulging drug information.

[Defense counsel]: *Well, objection, Your Honor, to hearsay.* And the State's simply asking him what other people knew. He doesn't know what they knew and we object.

[Prosecutor]: Your Honor, I'm asking how many people he talked to, not what they said.

THE COURT: All right. That's overruled.

Q. (By [Prosecutor]) How many different people did you talk to about this Defendant dealing drugs?

A. Roughly about 10 to 12 people.

Q. And is that how you became --

[Defense counsel]: *And we object, Your Honor, to* that -- and could we have a continuing objection on *any statements made by persons who are not going to appear*?

THE COURT: Of course you can. I don't think they've had any statements made but if they get to that point, yes.

[Defense counsel]: All right.

. . . .

[Prosecutor]: So to be fair, you've never placed him under arrest for any other narcotics offenses?

A. Correct.

Q. But you have had him as a suspect in multiple instances, correct?

[Defense counsel]: *We object to that*, Your Honor. *Again* --

THE COURT: It's overruled.

[Emphases added.] Officer Bennett added that Marin had "been on the radar for trafficking narcotics for a very long time with the City of Euless Police Department as well as other drug task forces within the county and state."

Marin attributed his fleeing to having been high and in possession of drug paraphernalia, but when asked on cross-examination whether he "had the wherewithal to call [his girlfriend] and tell her to file a false police report" to list his vehicle as stolen so the police would not look for him, he said, "Yes." He agreed that his girlfriend had made the false report and that she had told the police he had been violent toward her, and he acknowledged that he had been convicted of assaulting her in 2010.

Marin denied having been a drug dealer and testified that he had worked to become drug-free for his children. He testified that his sobriety date was October 5, 2017, and that he had graduated from an intensive outpatient drug treatment program in April 2018. The December 12, 2018 drug test that Marin had taken as part of the PSI was negative. Marin said that he had a job and that his employer knew about his addiction problem and gave him extra time to attend AA and NA meetings. He asked the trial court to grant him community supervision so that he could "continue [his] sobriety," be productive, and be there for his children.

Marin admitted that he had been convicted of evading arrest before, first in 2007 for "simple evading," for which he received a 40-day sentence, and then again after his 2013 deferred adjudication community supervision for evading arrest with a

5

vehicle was revoked, leading to a two-year sentence. He also acknowledged that he had been arrested for seven misdemeanor offenses, resulting in five convictions, and that he had been arrested for approximately ten different felony offenses but with only one conviction.

### III. Discussion

In his single point, Marin complains that under *Crawford*, the State cannot use nontestifying witnesses to prove any element of the offense and that the only testimony presented by the State as to Marin's having any connection to drugs "was the objected[-]to testimony about 10 to 12 people the officer had talked to about [Marin's] drug involvement without any testimony about who these secret witnesses were and how they would have had this knowledge." Marin complains that he was denied a fair trial because of this testimony when "[m]aybe they were drug dealers, maybe they were school teachers, and maybe they were people who just made things up."

But the elements of the offense to which he pleaded guilty and of which he was convicted—evading arrest or detention with a vehicle[5]—had nothing to do with the drug-related testimony except to explain why the officer had been in a position to see him flee and to help the trial court determine the appropriate sentence for the

---

[5]A person commits evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. Tex. Penal Code Ann. § 38.04(a).

evading-arrest offense. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)(A) (stating that regardless of the plea and whether the judge or jury will assess punishment, "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing"). Thus, the admission of this evidence was not an abuse of discretion.

Further, Marin never raised the Confrontation Clause as the basis for his objections. *See Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (stating a trial objection that referenced only "hearsay" did not preserve error on Confrontation Clause grounds). And by the time Marin raised his objections, Officer Bennett had already testified that he had learned of Marin from crime stopper tips, other investigations, and informants. And the PSI, which contained information similar to Officer Bennett's testimony, had been admitted into evidence without objection as well. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1); *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection."); *Sell v. State*, 488 S.W.3d 397, 398 (Tex. App.—Fort Worth 2016, pet. ref'd) (referencing *Stringer v. State*, 309 S.W.3d 42, 48 (Tex. Crim. App. 2010), for the proposition that when a PSI is used in a non-capital case in which the defendant has elected to have the trial court determine sentencing, there is no violation of a defendant's Sixth Amendment right to confrontation based on the PSI's information). Accordingly, we overrule Marin's sole point.

## IV.  Conclusion

Having overruled Marin's sole point, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 9, 2020

8