**Opinion filed April 30, 2009**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-07-00270-CR & 11-07-00271-CR

_____

## MARGARITO MIKE REYES, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause Nos. CR12639 & CR12640**

## M E M O R A N D U M   O P I N I O N

Margarito Mike Reyes appeals his convictions by a jury for the offenses of indecency with a child by contact[1] and aggravated sexual assault.[2] The jury assessed his punishment for the offense of aggravated sexual assault at ten years confinement in the Texas Department of Criminal Justice, Institutional Division, and for the offense of indecency with a child at five years in the Texas Department of Criminal Justice, Institutional Division. The trial court ordered that he serve his sentences consecutively. Reyes contends in two points of error that the trial court reversibly erred

[1]Cause No. 11-07-00270-CR.

[2]Cause No. 11-07-00271-CR.

and abused its discretion in overruling his hearsay objections to the testimony of Donna Ann Wright with respect to what the complainants and their mother told her and that the evidence is factually insufficient. We affirm.

Reyes claims in his first point of error that the trial court erred and abused its discretion when it admitted evidence over his hearsay objection as to what the complainants and their mother had told Wright. Wright testified that she is a pediatric nurse practitioner employed at Cook Children's Medical Center in Fort Worth. She indicated that the complainants were referred to her by Texas Child Protective Services due to concerns of sexual abuse. She related that she interviews victims and their parents for the purpose of obtaining a history so as to determine how to diagnose and treat the victims. When the State asked her to relate to the jury statements that the complainants and their mother had made for the purpose of medical diagnosis or treatment and describing medical history, counsel for Reyes objected on the basis of hearsay. In one instance, the trial court sustained the objection with respect to the complainants' mother, except as to history. The State's attorney rephrased his question to inquire only about history that would assist Wright in reaching her diagnosis. In all other instances, the trial court overruled the objection.

Rule 803(4) of the Texas Rules of Evidence provides that statements made for purposes of medical diagnosis or treatment and describing medical history, among other things, are not excluded by the hearsay rule even though the declarant is available as a witness. TEX. R. EVID. 803(4). Inasmuch as the substance of Wright's testimony related to statements made to her for purposes of medical diagnosis or treatment and describing medical history and inasmuch as such statements are not excluded by the hearsay rule, the trial court did not err or abuse its discretion by admitting those statements into evidence.

For the first time on appeal, Reyes appears to contend that his constitutional right to confrontation was denied, relying on *Crawford v. Washington*, 541 U.S. 36 (2004), and *Russeau v. State*, 171 S.W.3d 871 (Tex. Crim. App. 2005). In *Crawford*, the United States Supreme Court held that testimonial statements of witnesses who are absent from trial are admissible only when the declarant is unavailable and only where the defendant has had an opportunity to cross-examine. *Crawford*, 541 U.S. at 59. We first note that Reyes failed to preserve error by failing to specifically object on this basis. *See Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) In any event, had the error been preserved, Reyes's right to confrontation was not violated inasmuch as the declarants were all witnesses at trial and Reyes had the opportunity to cross-examine them. *Russeau*

is distinguishable because in that case the declarants had never been cross-examined by the defendant and were not present at trial. *Russeau*, 171 S.W.3d at 880. We overrule the first point of error.

Reyes urges in his second point of error that the evidence is factually insufficient to support his convictions. To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

Reyes was indicted for the offense of indecency with a child. The indictment alleged that he touched the complainant's genitals with the intent to arouse or gratify his sexual desire at a time when the complainant was younger than seventeen years of age and not his spouse. The complainant in this case chose the pseudonym of "Fluffy." Reyes was also indicted for the offense of aggravated sexual assault. The indictment alleged that he intentionally or knowingly caused the penetration or contact of the sexual organ of the complainant by his sexual organ at a time when the complainant was younger than fourteen years of age and not his spouse. The complainant in this case chose the pseudonym of "Junior."

Wright testified that, upon referral by CPS for concerns of sexual abuse, she interviewed the complainants and their mother. Wright indicated that, when Jessica ("Fluffy's" mother) brought her in, she said it was because there was "touching by her stepdad." Jessica related that the touching was on "Fluffy's" back, her stomach, and her breasts. "Fluffy" told Wright that her stepdad touched her on her breasts and "kind of" in her private spot. Wright said that "Fluffy" answered, "Yes," when Wright asked her if her stepdad had touched her private spot with his private spot and if it went inside her private spot. She related that "Fluffy" also said her stepdad put his finger inside her private spot. "Fluffy" further indicated that her stepdad had put his mouth on her private spot and had rubbed her private spot. According to Wright, "Fluffy" said that her stepdad's private spot felt wet.

Wright acknowledged that her physical exam of "Fluffy" showed that her female sexual organ, her genitalia, and her anal area were all within normal limits. When asked if there was any physical evidence that sexual intercourse had occurred with the child, Wright replied that there was no trauma. She insisted that this was consistent with what the child was telling her because of the nature of the tissue in the genital area and the length of time since the activity described by the child had occurred. Wright testified that she diagnosed "Fluffy" with sexual abuse, no genital or anal trauma.

Wright testified that Jessica, the complainants' mother, told her that, after "Fluffy" told what Reyes had done, "Junior" told CPS that Reyes had raped her. Wright indicated "Junior" told her that Reyes had put his penis and his finger into her private part and that he had put his finger in her anal area. "Junior" also said that Reyes had his mouth on her private and that she had to put her mouth on his private. She also said that he rubbed on her private and touched her on her breasts. Wright said that "Junior" told her this had happened two years before the interview, when she was twelve years of age. Wright related that she did not expect there to be any physical evidence after that length of time. Wright acknowledged that her exam of "Junior" showed no trauma in her genital or anal area. She indicated that her diagnosis with respect to "Junior" was sexual abuse, no anal or genital trauma. Wright related that an intact hymen is not determinative of whether a person has engaged in sexual intercourse, even if it has been multiple times.

"Junior" testified that she did not love Reyes because he never let them "have a life." She indicated that she saw him touch her sister "Fluffy" on her privates. She said they did not tell their mother because they were scared she would not believe them. "Junior" indicated that she told "Fluffy" what had happened to her and told her not to tell. She related that she had also told her friends and a school counselor about what was happening. She also said she told CPS what had happened to her and her sister. She indicated that she loved her mother and wanted to go back and live with her and that she knew that, if she said she was making everything up, she could go home and be with her mom. However, she said she did not want to do that because Reyes needed to pay for what he did.

"Junior" testified that, when she was in fifth grade, Reyes put his penis inside her, in her front part. She said she was telling the truth but that she was afraid her mother would not believe her. On cross-examination, "Junior" testified that her parents were really strict with her, with Reyes being more strict than her mother. She enumerated several things he was strict about that related to her

4

hanging out with friends or making phone calls. She insisted that no one had ever told her to say anything that was untrue and that she did not want to take any of it back.

"Fluffy" testified that, on the occasion when "Junior" saw Reyes touch her, he was touching her under her pants on her female parts. She said this happened other times as well. She insisted there was nothing she could do to make Reyes stop touching her.

On cross-examination, "Fluffy" acknowledged that Reyes and her mother were pretty strict on her. Additionally, she acknowledged that she was upset when, after she went to a football game instead of a volleyball practice, her mother and Reyes made her quit volleyball. She indicated that it was the next day when she told the counselor at school that Reyes was touching her under her shirt. She also acknowledged that she told Jack Carr that Reyes touched her in her private part with his hand, while telling someone at Cook Children's Hospital that he touched her with his penis and his finger. She denied that she told her mother that she had "made all of this up." Later, when asked if Carr wanted to talk to her about things she had told her mom about this not happening, she replied, "I don't remember."

Carr testified that he is employed as a reserve investigator with the Erath County Sheriff's Department. He referred to several interviews with Reyes prior to his arrest. He indicated that Reyes was cooperative and that he did not admit to committing any crime. He related that he gave both girls every opportunity to correct what they were telling him if they were saying it for some other reason but that they reaffirmed their statements. He denied that the complainants' mother ever came to him and said that one of the girls wanted to change her story.

The defense offered a video of an interview in September with Reyes, which was played for the jury. Carr acknowledged that Reyes was not arrested after the interview and, in fact, was not arrested until after the case's second presentation to the grand jury the following February.

On redirect examination, Carr testified that he did not find anything in his investigation indicating that the girls were using their story as a front. On recross-examination, Carr said that "Junior" said in a statement that Reyes put his finger in her private part and also "put his penis . . . and he kept touching her with his finger in her private parts." He also indicated she said she saw Reyes touching her sister in her private parts with his finger. He also said that she said in the statement that it happened over a long period of time. He related that she said that there was penetration with Reyes's penis and with his finger, as well as touching with his hand. Also on

5

recross-examination, Carr said that "Fluffy" indicated in her statement that Reyes had touched her breasts and private parts with his hand.

Sergeant Matthew Mull of the Texas Department of Public Safety testified that he interviewed Reyes concerning the charges made by the complainants. He indicated Reyes at first denied having any contact at all with "Fluffy," while later saying that he had contact with her breasts on numerous occasions while they were engaged in wrestling or horseplay. He stated that, with respect to "Junior," Reyes at first denied contact with her. Then he said that he had touched her breasts on two occasions and once "had placed his hand and grabbed [the] waistband of her pants." He related that Reyes denied touching "Junior's" vagina. On cross-examination, Sergeant Mull acknowledged that Reyes had not admitted to any criminal activity. On redirect examination, Sergeant Mull testified that he did not feel like Reyes was being truthful.

Tracy Bettis testified that she is a junior high school counselor for the Stephenville Independent School District. She indicated that she knew both of the complainants because they were each receiving special education services for deficiencies in English and reading or writing. She said that neither child was retarded. She related that, in September 2006 after a conversation with "Fluffy," she took her to talk to the school nurse, Joan Pope. Bettis said that, following that conversation, she made a report to the CPS Statewide Abuse Hotline. She indicated that the reputation of both "Fluffy" and "Junior" for truthfulness was good. During cross-examination, she acknowledged that "Fluffy" was only in school for about six weeks. However, she said that that was enough time for her to express an opinion as to Fluffy's truthfulness because those who are not truthful really stand out.

Pope testified that she is the school nurse to whom Bettis testified she brought "Fluffy" before reporting abuse to CPS. She indicated that she knew both complainants. With respect to "Junior," she related that she had not had any encounters of "a non-truth." She added that she had not heard about any non-truth from anyone else. With respect to "Fluffy," she stated that she had never heard of anything being not true. She stated that, if she was told something by either of the complainants, she would believe it.

Jessica Reyes, the complainants' mother, testified that she and Reyes had been married almost twelve years. She indicated that the children and Reyes had a good relationship and that he treated them like they were his children. She said she and Reyes both were the disciplinarians in the family. She related that they disciplined the complainants by sending them to their room, taking

6

away the television, grounding them, or adding chores, as opposed to hitting them. She spoke of restrictions concerning their movement around the neighborhood, their bedtime, and their clothing. She indicated that the complainants would lie but "not big, big lies" and that they did not lie very often. Jessica testified that "Fluffy" lied to her by telling her she was going to volleyball practice when she had gone to a Tarleton football event instead. She indicated that, as punishment, she and Reyes had taken her out of volleyball but that she had continued in it without their knowledge. She insisted that "Fluffy" was really upset about being taken out of volleyball. She said "Fluffy" was upset with Reyes about this.

Jessica testified that, after being notified by CPS about the allegations the complainants were making, she called Reyes and told him about them. A tape recording made of a telephone conversation between Jessica and Reyes was played to the jury. According to Jessica, the conversation took place when she called Reyes from the police station after the initial conversation in which she told him about the charges. She insisted that, if Reyes had sexually assaulted "Junior," she would have known it because she slept with her bedroom door open and lived in a very small trailer house. She said that neither girl told her what happened.

Jessica testified that at first she believed the complainants but that she changed her mind later when they seemed happy and not traumatized after Reyes was out of the house. She indicated that, one day when she was with "Fluffy," "Fluffy" said, "[I]t didn't happen," without saying what she was referring to.

Jessica acknowledged that CPS had previously removed her son from her custody because of a failure to protect him. She said she did not have anything against CPS over that. She acknowledged that she lied to the grand jury when she testified that Reyes had not had contact with the complainants since they were removed. She later contended that Reyes's visit to the house was beyond the time limit specified on the CPS safety plan. She concluded her cross-examination testimony by saying that she did not know if the complainants were telling the truth. On redirect examination, Jessica said she believed they were lying.

Wayne Samuel Weaver testified that he was appointed to represent the complainants in a CPS case in which they had been removed from their home. He indicated that, when he told them they could go live with their mother if they would tell everyone that they had made the story up, "Fluffy" said, "[O]kay." He stated that she said she really wanted to go home that badly. However,

7

when he asked her if she was making it up, she said, "[N]o." He said he had no reason to doubt the credibility of the complainants.

Reyes testified that he and Jessica were strict on the girls. He said this included monitoring who their friends were and where they went and denying the use of cell phones and internet. He indicated that, if he ever touched the complainants in an inappropriate place, it was not intentional and would have occurred in the context of wrestling or horseplay. He denied ever having sex with either of the complainants. He testified that "Fluffy" was mad at him for taking her off the volleyball team. He indicated that all of these allegations came right after the volleyball incident. He spoke of his cooperation with law enforcement authorities and CPS, saying that he did everything that was ever asked of him by any authority figure dealing with the case.

On cross-examination, Reyes testified that, before these accusations, he would not have considered the complainants as liars. He indicated that they had never accused anyone else of sexually assaulting them. He said he was aware of the incident when "Junior" walked in when he was with "Fluffy" but denied that his hands were in her pants. He concluded his testimony by saying that he did not have sexual intercourse with or touch either of the complainants inappropriately and that they were saying he did because they were mad at him and wanted him out of the house. He indicated that, in the end, they would probably get their way.

Considering all of the evidence in a neutral light, we conclude that the evidence supporting the verdict is factually sufficient to support the conviction because it is not so weak that the verdict is clearly wrong and manifestly unjust and that the verdict is not against the great weight and preponderance of the conflicting evidence. We disagree with Reyes's contention that, because the complainants had reason to be mad at him and because there was no physical evidence supporting the complainants' testimony, the evidence is factually insufficient. We overrule the second point of error.

The judgments are affirmed.


April 30, 2009                                             PER CURIAM

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[3]

---

[3]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.