Opinion filed April 30, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed April 30,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                       Nos. 11-07-00270-CR & 11-07-00271-CR

                                                       ________

 

                               MARGARITO
MIKE REYES, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 266th District Court

 

                                                           Erath
County, Texas

 

                                    Trial
Court Cause Nos. CR12639 & CR12640

 



 

                                             M
E M O R A N D U M   O P I N I O N








Margarito
Mike Reyes appeals his convictions by a jury for the offenses of indecency with
a child by contact[1] and
aggravated sexual assault.[2]  The jury
assessed his punishment for the offense of aggravated sexual assault at ten
years confinement in the Texas Department of Criminal Justice, Institutional
Division, and for the offense of indecency with a child at five years in the
Texas Department of Criminal Justice, Institutional Division.  The trial court
ordered that he serve his sentences consecutively.  Reyes contends in two
points of error that the trial court reversibly erred and abused its discretion
in overruling his hearsay objections to the testimony of Donna Ann Wright with
respect to what the complainants and their mother told her and that the
evidence is factually insufficient.  We affirm.

Reyes
claims in his first point of error that the trial court erred and abused its
discretion when it admitted evidence over his hearsay objection as to what the
complainants and their mother had told Wright.  Wright testified that she is a
pediatric nurse practitioner employed at Cook Children=s Medical Center in Fort Worth.  She indicated
that the complainants were referred to her by Texas Child Protective Services
due to concerns of sexual abuse.  She related that she interviews victims and
their parents for the purpose of obtaining a history so as to determine how to
diagnose and treat the victims.  When the State asked her to relate to the jury
statements that the complainants and their mother had made for the purpose of
medical diagnosis or treatment and describing medical history, counsel for
Reyes objected on the basis of hearsay.  In one instance, the trial court
sustained the objection with respect to the complainants= mother, except as to history.  The State=s attorney rephrased his
question to inquire only about history that would assist Wright in reaching her
diagnosis.  In all other instances, the trial court overruled the objection.

Rule
803(4) of the Texas Rules of Evidence provides that statements made for
purposes of medical diagnosis or treatment and describing medical history,
among other things, are not excluded by the hearsay rule even though the
declarant is available as a witness.  Tex.
R. Evid. 803(4).  Inasmuch as the substance of Wright=s testimony related to
statements made to her for purposes of medical diagnosis or treatment and
describing medical history and inasmuch as such statements are not excluded by
the hearsay rule, the trial court did not err or abuse its discretion by admitting
those statements into evidence.  








For
the first time on appeal, Reyes appears to contend that his constitutional
right to confrontation was denied, relying on Crawford v. Washington,
541 U.S. 36 (2004), and Russeau v. State, 171 S.W.3d 871 (Tex. Crim.
App. 2005).  In Crawford, the United States Supreme Court held that
testimonial statements of witnesses who are absent from trial are admissible
only when the declarant is unavailable and only where the defendant has had an
opportunity to cross-examine.  Crawford, 541 U.S. at 59.  We first note
that Reyes failed to preserve error by failing to specifically object on this
basis.  See Paredes v. State, 129 S.W.3d 530, 535 (Tex. Crim. App.
2004)  In any event, had the error been preserved, Reyes=s right to confrontation was not violated
inasmuch as the declarants were all witnesses at trial and Reyes had the
opportunity to cross-examine them.  Russeau is distinguishable because
in that case the declarants had never been cross-examined by the defendant and
were not present at trial.  Russeau, 171 S.W.3d at 880.  We overrule the
first point of error.   

Reyes
urges in his second point of error that the evidence is factually insufficient
to support his convictions.  To determine if the evidence is factually
sufficient, the appellate court reviews all of the evidence in a neutral
light.  Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006)
(overruling in part Zuniga v. State, 144 S.W.3d 477 (Tex. Crim. App.
2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain
v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court
determines whether the evidence supporting the verdict is so weak that the
verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence. Watson,
204 S.W.3d at 414-15; Johnson, 23 S.W.3d at 10-11.

Reyes
was indicted for the offense of indecency with a child.  The indictment alleged
that he touched the complainant=s
genitals with the intent to arouse or gratify his sexual desire at a time when
the complainant was younger than seventeen years of age and not his spouse. 
The complainant in this case chose the pseudonym of AFluffy.@ 
Reyes was also indicted for the offense of aggravated sexual assault.  The
indictment alleged that he intentionally or knowingly caused the penetration or
contact of the sexual organ of the complainant by his sexual organ at a time
when the complainant was younger than fourteen years of age and not his
spouse.  The complainant in this case chose the pseudonym of AJunior.@

Wright
testified that, upon referral by CPS for concerns of sexual abuse, she
interviewed the complainants and their mother.  Wright indicated that, when
Jessica (AFluffy=s@ mother) brought her in, she said it was
because there was Atouching
by her stepdad.@ 
Jessica related that the touching was on AFluffy=s@ back, her stomach, and her breasts.  AFluffy@ told Wright that her
stepdad touched her on her breasts and Akind
of@ in her private
spot.  Wright said that AFluffy@ answered, AYes,@ when Wright asked her if her stepdad had
touched her private spot with his private spot and if it went inside her
private spot.  She related that AFluffy@ also said her stepdad put
his finger inside her private spot.  AFluffy@ further indicated that her
stepdad had put his mouth on her private spot and had rubbed her private spot. 
According to Wright, AFluffy@ said that her stepdad=s private spot felt wet.








Wright
acknowledged that her physical exam of AFluffy@ showed that her female
sexual organ, her genitalia, and her anal area were all within normal limits. 
When asked if there was any physical evidence that sexual intercourse had
occurred with the child, Wright replied that there was no trauma.  She insisted
that this was consistent with what the child was telling her because of the
nature of the tissue in the genital area and the length of time since the
activity described by the child had occurred.  Wright testified that she
diagnosed AFluffy@ with sexual abuse, no
genital or anal trauma.

Wright
testified that Jessica, the complainants=
mother, told her that, after AFluffy@ told what Reyes had done, AJunior@ told CPS that Reyes had
raped her.  Wright indicated AJunior@ told her that Reyes had
put his penis and his finger into her private part and that he had put his
finger in her anal area.  AJunior@ also said that Reyes had
his mouth on her private and that she had to put her mouth on his private.  She
also said that he rubbed on her private and touched her on her breasts.  Wright
said that AJunior@ told her this had happened
two years before the interview, when she was twelve years of age.  Wright
related that she did not expect there to be any physical evidence after that
length of time.  Wright acknowledged that her exam of AJunior@
showed no trauma in her genital or anal area.  She indicated that her diagnosis
with respect to AJunior@ was sexual abuse, no anal
or genital trauma.  Wright related that an intact hymen is not determinative of
whether a person has engaged in sexual intercourse, even if it has been
multiple times.

AJunior@ testified that she did not
love Reyes because he never let them Ahave
a life.@  She
indicated that she saw him touch her sister AFluffy@ on her privates.  She said
they did not tell their mother because they were scared she would not believe
them.  AJunior@ indicated that she told AFluffy@ what had happened to her
and told her not to tell.  She related that she had also told her friends and a
school counselor about what was happening.  She also said she told CPS what had
happened to her and her sister.  She indicated that she loved her mother and
wanted to go back and live with her and that she knew that, if she said she was
making everything up, she could go home and be with her mom.  However, she said
she did not want to do that because Reyes needed to pay for what he did.








AJunior@ testified that, when she
was in fifth grade, Reyes put his penis inside her, in her front part.  She
said she was telling the truth but that she was afraid her mother would not
believe her.  On cross-examination, AJunior@ testified that her parents
were really strict with her, with Reyes being more strict than her mother.  She
enumerated several things he was strict about that related to her hanging out
with friends or making phone calls.  She insisted that no one had ever told her
to say anything that was untrue and that she did not want to take any of it
back.

AFluffy@ testified that, on the
occasion when AJunior@ saw Reyes touch her, he
was touching her under her pants on her female parts.  She said this happened
other times as well.  She insisted there was nothing she could do to make Reyes
stop touching her.

On
cross-examination, AFluffy@ acknowledged that Reyes
and her mother were pretty strict on her.  Additionally, she acknowledged that
she was upset when, after she went to a football game instead of a volleyball
practice, her mother and Reyes made her quit volleyball.  She indicated that it
was the next day when she told the counselor at school that Reyes was touching
her under her shirt.  She also acknowledged that she told Jack Carr that Reyes
touched her in her private part with his hand, while telling someone at Cook
Children=s Hospital
that he touched her with his penis and his finger.  She denied that she told
her mother that she had Amade
all of this up.@ 
Later, when asked if Carr wanted to talk to her about things she had told her
mom about this not happening, she replied, AI
don=t remember.@

Carr
testified that he is employed as a reserve investigator with the Erath County
Sheriff=s Department. 
He referred to several interviews with Reyes prior to his arrest.  He indicated
that Reyes was cooperative and that he did not admit to committing any crime. 
He related that he gave both girls every opportunity to correct what they were
telling him if they were saying it for some other reason but that they
reaffirmed their statements.  He denied that the complainants= mother ever came to him
and said that one of the girls wanted to change her story.

The
defense offered a video of an interview in September with Reyes, which was
played for the jury.  Carr acknowledged that Reyes was not arrested after the
interview and, in fact, was not arrested until after the case=s second presentation to
the grand jury the following February.








On
redirect examination, Carr testified that he did not find anything in his
investigation indicating that the girls were using their story as a front.  On
recross-examination, Carr said that AJunior@ said in a statement that
Reyes put his finger in her private part and also Aput his penis . . . and he kept touching her
with his finger in her private parts.@ 
He also indicated she said she saw Reyes touching her sister in her private
parts with his finger.  He also said that she said in the statement that it
happened over a long period of time.  He related that she said that there was
penetration with Reyes=s
penis and with his finger, as well as touching with his hand.  Also on
recross-examination, Carr said that AFluffy@ indicated in her statement
that Reyes had touched her breasts and private parts with his hand.

Sergeant
Matthew Mull of the Texas Department of Public Safety testified that he
interviewed Reyes concerning the charges made by the complainants.  He
indicated Reyes at first denied having any contact at all with AFluffy,@ while later saying that he
had contact with her breasts on numerous occasions while they were engaged in
wrestling or horseplay.  He stated that, with respect to AJunior,@ Reyes at first denied
contact with her.  Then he said that he had touched her breasts on two
occasions and once Ahad
placed his hand and grabbed [the] waistband of her pants.@  He related that Reyes
denied touching AJunior=s@ vagina.  On cross-examination, Sergeant Mull
acknowledged that Reyes had not admitted to any criminal activity.  On redirect
examination, Sergeant Mull testified that he did not feel like Reyes was being
truthful.

Tracy
Bettis testified that she is a junior high school counselor for the
Stephenville Independent School District.  She indicated that she knew both of
the complainants because they were each receiving special education services
for deficiencies in English and reading or writing.  She said that neither
child was retarded.  She related that, in September 2006 after a conversation
with AFluffy,@ she took her to talk to
the school nurse, Joan Pope.  Bettis said that, following that conversation,
she made a report to the CPS Statewide Abuse Hotline.  She indicated that the
reputation of both AFluffy@ and AJunior@ for truthfulness was
good.  During cross-examination, she acknowledged that AFluffy@
was only in school for about six weeks.  However, she said that that was enough
time for her to express an opinion as to Fluffy=s
truthfulness because those who are not truthful really stand out.

Pope
testified that she is the school nurse to whom Bettis testified she brought AFluffy@ before reporting abuse to
CPS.  She indicated that she knew both complainants.  With respect to AJunior,@ she related that she had
not had any encounters of Aa
non-truth.@  She added
that she had not heard about any non-truth from anyone else.  With respect to AFluffy,@ she stated that she had
never heard of anything being not true.  She stated that, if she was told
something by either of the complainants, she would believe it.








Jessica
Reyes, the complainants=
mother, testified that she and Reyes had been married almost twelve years.  She
indicated that the children and Reyes had a good relationship and that he
treated them like they were his children.  She said she and Reyes both were the
disciplinarians in the family.  She related that they disciplined the
complainants by sending them to their room, taking away the television,
grounding them, or adding chores, as opposed to hitting them.  She spoke of
restrictions concerning their movement around the neighborhood, their bedtime,
and their clothing.  She indicated that the complainants would lie but Anot big, big lies@ and that they did not lie
very often.  Jessica testified that AFluffy@ lied to her by telling her
she was going to volleyball practice when she had gone to a Tarleton football
event instead.  She indicated that, as punishment, she and Reyes had taken her
out of volleyball but that she had continued in it without their knowledge. 
She insisted that AFluffy@ was really upset about
being taken out of volleyball.  She said AFluffy@ was upset with Reyes about
this.

Jessica
testified that, after being notified by CPS about the allegations the
complainants were making, she called Reyes and told him about them.  A tape
recording made of a telephone conversation between Jessica and Reyes was played
to the jury.  According to Jessica, the conversation took place when she called
Reyes from the police station after the initial conversation in which she told
him about the charges.  She insisted that, if Reyes had sexually assaulted AJunior,@ she would have known it
because she slept with her bedroom door open and lived in a very small trailer
house.  She said that neither girl told her what happened.

Jessica
testified that at first she believed the complainants but that she changed her
mind later when they seemed happy and not traumatized after Reyes was out of
the house.  She indicated that, one day when she was with AFluffy,@ AFluffy@
said, A[I]t didn=t happen,@ without saying what she
was referring to.

Jessica
acknowledged that CPS had previously removed her son from her custody because
of a failure to protect him.  She said she did not have anything against CPS
over that.  She acknowledged that she lied to the grand jury when she testified
that Reyes had not had contact with the complainants since they were removed. 
She later contended that Reyes=s
visit to the house was beyond the time limit specified on the CPS safety plan. 
She concluded her cross-examination testimony by saying that she did not know
if the complainants were telling the truth.  On redirect examination, Jessica
said she believed they were lying.








Wayne
Samuel Weaver testified that he was appointed to represent the complainants in
a CPS case in which they had been removed from their home.  He indicated that,
when he told them they could go live with their mother if they would tell
everyone that they had made the story up, AFluffy@ said, A[O]kay.@  He stated that she said
she really wanted to go home that badly.  However, when he asked her if she was
making it up, she said, A[N]o.@  He said he had no reason
to doubt the credibility of the complainants.

Reyes
testified that he and Jessica were strict on the girls.  He said this included
monitoring who their friends were and where they went and denying the use of
cell phones and internet.  He indicated that, if he ever touched the
complainants in an inappropriate place, it was not intentional and would have
occurred in the context of wrestling or horseplay.  He denied ever having sex
with either of the complainants.  He testified that AFluffy@
was mad at him for taking her off the volleyball team.  He indicated that all
of these allegations came right after the volleyball incident.  He spoke of his
cooperation with law enforcement authorities and CPS, saying that he did
everything that was ever asked of him by any authority figure dealing with the
case.

On
cross-examination, Reyes testified that, before these accusations, he would not
have considered the complainants as liars.  He indicated that they had never
accused anyone else of sexually assaulting them.  He said he was aware of the
incident when AJunior@ walked in when he was with
AFluffy@ but denied that his hands
were in her pants.  He concluded his testimony by saying that he did not have
sexual intercourse with or touch either of the complainants inappropriately and
that they were saying he did because they were mad at him and wanted him out of
the house.  He indicated that, in the end, they would probably get their way.

         
Considering all of the evidence in a neutral light, we conclude that the
evidence supporting the verdict is factually sufficient to support the
conviction because it is not so weak that the verdict is clearly wrong and manifestly
unjust and that the verdict is not against the great weight and preponderance
of the conflicting evidence.  We disagree with Reyes=s contention that, because the complainants
had reason to be mad at him and because there was no physical evidence
supporting the complainants=
testimony, the evidence is factually insufficient.  We overrule the second
point of error.

The
judgments are affirmed. 

 

April 30, 2009                                                              PER
CURIAM

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Hill, J.[3]









[1]Cause No. 11-07-00270-CR.





[2]Cause No. 11-07-00271-CR.





[3]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.