Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



**MEMORANDUM OPINION**

No. 04-09-00748-CR

Beatriz **PEREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-1315
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Rebecca Simmons, Justice
           Steven C. Hilbig, Justice
           Marialyn Barnard, Justice

Delivered and Filed:  November 24, 2010

AFFIRMED

A jury found appellant Beatriz Perez guilty of murder, and sentenced her to life imprisonment in the Texas Department of Criminal Justice–Institutional Division.  On appeal, Perez contends the evidence is insufficient to support her conviction, and the trial court erred in admitting certain evidence.  We affirm the trial court's judgment.

**FACTUAL BACKGROUND**

Perez and Juan Abitu married in December 2006, but separated soon thereafter. Abitu moved into an apartment behind the home of Daniel Herrera and his mother. While separated, Perez and Abitu remained in contact. On August 21, 2007, Perez was served with divorce papers.

Two days later, Daniel Herrera and his mother went to Abitu's apartment to deliver his mail. After knocking on the door and receiving no response, Herrera looked through the screen door and saw Abitu lying on the kitchen floor. Herrera called Emergency Medical Services.

When the emergency crew arrived, they found Abitu's apartment door locked. Accordingly, to reach Abitu, the crew had to cut through the screen door in the kitchen. Cynthia Hunt, an evidence technician with the San Antonio Police Department, documented the crime scene. No murder weapon was found, and no legible prints were collected.

Kimberly Gallegos, a Bexar County medical investigator, entered Abitu's apartment to examine the body and determine the cause and manner of death. She "bagged" Abitu's hands before moving the body, and noticed both dry and wet blood surrounding Abitu. According to Gallegos, Abitu's body showed light rigor mortis in the upper and lower extremities. However, Gallegos was unable to determine the exact time of death based on rigor mortis.

Dr. Jennifer Rulon of the Bexar County Medical Examiner's Office conducted the autopsy. She determined the cause of death to be blunt force trauma to Abitu's head. Dr. Rulon stated she found two hairs embedded in dry blood on Abitu's left hand. The hairs were tested for DNA. One of the hairs did not have sufficient genetic material to determine the donor, but the other hair was determined to belong to Perez.

On September 23, 2007, Perez was detained at the Eagle Pass border crossing, trying to reenter the United States from Mexico. She was arrested and charged with Abitu's murder.

At trial, multiple witnesses testified regarding Perez's actions on the days surrounding Abitu's murder. Arnold Menchaca, Perez's brother, testified that on August 23, the day Abitu's body was found, Perez called him to say she was leaving town for a couple of weeks. Perez asked Menchaca to watch her house. Perez then called him the next day to ask about her daughter. When Menchaca tried to ask her about Abitu's death, Perez hung up the phone.

Herrera testified about his relationship with Abitu and Perez, and gave an account of his actions on August 22. Herrera lived with his mother in the main house in front of Abitu's apartment. He was an acquaintance of Abitu, and mainly saw him when he moved his car to allow Abitu access to the driveway. Herrera testified he saw Abitu around 5:15 p.m. on August 22, the night before he found Abitu's body. Herrera stated he later left the house, and when he returned around 9:30 p.m., Abitu's car was in the driveway.

Herrera testified he had a sexual relationship with Perez. Herrera stated Perez initially told him her name was "Sophia." He testified Perez called him on August 22, asking if Herrera knew about a woman who had called her asking for Abitu. Herrera said Perez sounded jealous and upset. Perez also asked to borrow money from Herrera so she could move, but then called the next day saying she no longer needed the money. Herrera testified that when he told Perez about Abitu's death, she did not seem bothered and asked only if he knew what happened. She then told Herrera not to tell anyone about the relationship she and Herrera had.

Mimi Mijares, Perez's probation officer in the Bexar County Corrections Department, testified regarding her communications with Perez after Abitu's murder. Mijares testified she received a phone call from Perez on August 31. Perez was sobbing and sounded very distraught.

Perez told Mijares Abitu was dead and that she saw him on the floor of his apartment through a window. Perez told Mijares she never went into the house, did not call the police, and moved to Mexico because she was frightened. Mijares said Perez mentioned she knew the police were looking for her. Mijares tried to convince Perez to call the police, but Perez stated she was concerned for her children. Perez called Mijares again on September 7 and told her about receiving the divorce papers. Perez told Mijares she wanted to kill herself. Mijares again tried to convince Perez to turn herself in or call the police. Perez finally agreed.

Perez testified at trial. She said that although she and Abitu separated, they saw each other regularly and were divorcing because he did not get along with her children. Perez testified she spent the weekend before Abitu's death at his apartment, but left on August 21. She stated she went over to Abitu's apartment the next morning on August 22, and saw Abitu's body on the kitchen floor through the screen door. Perez claimed she was scared and left for Mexico. She testified she did not have anything to do with Abitu's death and that she never had an affair with Herrera.

Based on this evidence, the jury found Perez guilty of Abitu's murder. Perez then perfected this appeal.

### SUFFICIENCY OF THE EVIDENCE

In light of the recent decision in *Brooks v. State*, we now use but one standard to review a sufficiency claim, the standard set forth in *Jackson v. Virginia*. *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010); *see Jackson v. Virginia*, 443 U.S. 307 (1979). We must now view the evidence in a light most favorable to the jury's verdict whenever a defendant challenges the sufficiency of the evidence supporting his or her conviction. *Brooks*, 2010 WL 3894613, at *1. As always, we must defer to the jury's findings

and may not reweigh the evidence to set aside the verdict simply because we disagree with it. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Resolution of conflicts in the evidence is within the exclusive province of the jury, and the jury may choose to believe all, some, or none of the testimony or evidence presented. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995); *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App.1991).

In her first issue, Perez contends the evidence is insufficient to support her murder conviction because the State's case was entirely circumstantial. To prove a defendant committed the offense of murder, the State must establish the defendant intentionally or knowingly caused the victim's death, or intended to cause serious bodily injury to the victim and committed an act clearly dangerous to human life that caused the victim's death. TEX. PENAL CODE ANN. § 19.02(b)(1)–(3) (West 2003). Proof of a culpable mental state invariably depends on circumstantial evidence, and the jury may determine the defendant's mental state from evidence of the defendant's acts, words, or conduct. *Montgomery v. State*, 198 S.W.3d 67, 87 (Tex. App.—Fort Worth 2006, pet. ref'd). Circumstantial evidence is as equally probative as direct evidence, and may alone be sufficient to prove guilt. *See Clayton v. State*, 235 S.W.3d 772, 778–82 (Tex. Crim. App. 2007).

At trial, the State introduced evidence to establish motive, opportunity, and consciousness of guilt. Abitu's body was found on August 23, 2007, two days after Perez received the divorce papers. Perez told her parole officer she wanted to kill herself after receiving the divorce papers. Perez admitted leaving the state almost immediately after the murder. In her testimony, Perez admitted she saw Abitu's body the morning of August 22, and left without calling the police. Her testimony was contradicted by State's evidence showing Abitu was alive at least until 5:15

p.m. on August 22. Furthermore, there was wet blood around the body the afternoon of August 23, pointing to a recent death. Thus, while it is unclear exactly when Perez was present inside Abitu's apartment, the jury was free to accept or reject all or any portion of the evidence, including any witness's testimony and Perez's own testimony. *See Heiselbetz*, 906 S.W.2d at 504. By finding her guilty, the jury implicitly rejected Perez's testimony and accepted the State's evidence pointing to her involvement in Abitu's murder.

The State also presented evidence of Perez's demeanor and subsequent actions after the murder. The State called Menchaca and Herrera as witnesses. Menchaca testified Perez called and asked him to watch over her house because she would be leaving town. Then, when they spoke on the phone the next day, Menchaca told Perez about Abitu's death and she hung up the phone. Herrera testified Perez did not seem upset when he told her about Abitu's death, and asked him only not to tell the police about the relationship she and Herrera had. Finally, Perez flew to Mexico shortly after the murder, and returned a month later, when she was detained at the border and eventually arrested for Abitu's murder.

Perez argues that most of the evidence of guilt stems from Herrera's testimony and the hair found on Abitu's left hand. She states that Herrera's testimony was not only inconsistent, but that he had a motive to kill Abitu because he was jealous of their relationship. Perez claims she never had a relationship with Herrera, and that because he had motive to kill Abitu, his testimony lacks credibility. Perez also argues the hair evidence is insignificant, because there was no way of telling when that hair made contact with Abitu's hand. However, Dr. Rulon testified the hair was embedded in blood on Abitu's hand.

The jury is the sole judge of the credibility of the witnesses and of the strength of the evidence and may choose to believe or disbelieve any portion of the witness's testimony.

*Heiselbetz*, 906 S.W.2d at 504; *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). Here, it was within the jury's province to believe Herrera's testimony as well as the rest of the evidence regarding Perez. Simply because Perez presents a different version of facts does not render the evidence insufficient to support the conviction. *See Anderson v. State*, 701 S.W.2d 868, 872 (Tex. Crim. App.1985) (highlighting appellant's presentation of different version of events does not render evidence insufficient to support conviction). The jury is free to accept or reject all or any portion of any witness's testimony, including Perez's testimony, and by finding her guilty, the jury implicitly rejected Perez's testimony. *See Heiselbetz*, 906 S.W.2d at 504. Giving deference to the jury's determination of credibility and weight given to the evidence, we hold the evidence is sufficient to support the jury's verdict. *See Brooks*, 2010 WL 3894613, at *1.

Because a rational trier of fact could have concluded beyond a reasonable doubt that Perez murdered Abitu, we hold the evidence was sufficient to support Perez's conviction and overrule her first issue.

### ADMISSION OF PHOTOGRAPH

In her second issue, Perez claims the trial court erred in admitting an autopsy photograph depicting the inside of Abitu's skull. She argues this evidence should have been excluded because it was more prejudicial than probative. *See* TEX. R. EVID. 403.

Admissibility of a photograph is within the trial court's discretion. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007), *cert. denied*, 128 S.Ct. 2872 (2009). In assessing the prejudicial effect of a photograph, courts may consider (1) the number of photographs offered, (2) the photograph's gruesomeness, detail, and size, (3) whether the photograph is in color, (4) whether the photograph is a close-up, (5) whether the person in the photograph is clothed, and

(6) any other factors unique to the situation. *Long v. State*, 823 S.W.2d 259, 270 (Tex. Crim. App. 1991). Additionally, photographs are generally admissible if verbal testimony about the matters depicted in the photograph is also admissible. *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004).

During trial, the State introduced into evidence a single color photograph showing the inside of Abitu's skull. The State presented the photograph when Dr. Rulon testified regarding the manner and means of Abitu's death. The State was required to prove all elements of the offense, including the cause of death, and this photograph supported the medical examiner's testimony that Abitu's death was caused by a blunt object "capable of causing death or serious bodily injury." The photograph showed the internal fractures on Abitu's skull, and it gave the jury a means to understand the medical examiner's conclusions regarding Abitu's cause of death. Thus, we hold the probative value of the photograph was not substantially outweighed by its possible prejudicial effect.

Furthermore, during her testimony, Dr. Rulon discussed the injuries to Abitu's head and skull. Perez did not object to this testimony. Because the medical examiner testified without objection to the injury and trauma to Abitu's skull, we hold any error in the admission of the photograph was rendered harmless by the admission of Dr. Rulon's testimony. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (holding that error, if any, in admission of evidence is cured where same evidence comes in elsewhere without objection); *see Leday v. State*, 983 S.W.2d 713, 716–18 (Tex. Crim. App. 1998) (holding that erroneous admission of evidence is rendered harmless by admission of similar evidence without objection).

Any error in the admission of the photograph was also rendered harmless by the court's limiting instruction to the jury regarding the photograph. The court instructed the jury to

consider the photograph only if it helped them in determining the manner and means of death. A reviewing court must presume the jury follows the trial court's instructions, and a limiting instruction cures any harm caused by the disputed evidence. *Moore v. State*, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994). Accordingly, we hold there was no abuse of discretion in the admittance of the photograph, and overrule Perez's second issue.

## CONCLUSION

In sum, we overrule Perez's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish