NUMBER 13-10-00098-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

                                  CORPUS CHRISTI -
EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



HUMBERTO GARCIA,                                                                            Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                
Appellee.

 

 



On appeal from the 148th District
Court

of Nueces County, Texas.

 

 



MEMORANDUM OPINION

 

Before Chief Justice Valdez and
Justices Rodriguez and Benavides

Memorandum Opinion by
Chief Justice Valdez

Appellant, Humberto
Garcia, was convicted of murder, aggravated assault, and two counts of engaging
in organized criminal activity.  See Tex.
Penal Code Ann. §§ 19.02(b)(2), 22.02 (Vernon 2003), § 71.02 (Vernon
Supp. 2010).  Garcia received a life sentence for the murder, ninety-nine
years’ confinement for the two counts of engaging in organized criminal
activity, and twenty years’ confinement for the aggravated assault.  By five
issues, Garcia contends that:  (1) his conviction was supported by
uncorroborated accomplice witness testimony, and, therefore, the evidence was
insufficient; (2) there was error in the trial court’s jury charge; and (3) the
State relied on perjured testimony.  We affirm.

I.          The Evidence

Several of the State’s
witnesses, including Priscilla Moreno, Clay Bonilla, Oswaldo Ahumada, Gilbert
Salas, and Gabriel Salas, testified that on July 25, 2008, they saw multiple
men shot with various types of weapons at a home on Segrest Street in Corpus
Christi, Texas.[1] 
However, none of these witnesses were able to identify any of the gunmen.

Cristina Cyre testified
that, she was at her home on Segrest with her three children when she heard “banging
on the [front] door” and multiple gun shots.  Cyre “grabbed the babies” and
told her other son, Tristan, to run to the back of the house.  Cyre did not see
who was shooting at the house.

Danny Villarreal, with
whom Cyre and her three children were living, was asleep in the bedroom when
the shooting began.[2] 
When Cyre “rolled [Villarreal] over,” she discovered that he had been shot and
was dead.  Two of Cyre’s children were also shot; however, both recovered from
their injuries.  According to Cyre, Tristan had tenty-six shotgun pellets
“throughout his body” and three pellets “in his skull.”  Cyre’s other child,
Dylan, had two shotgun pellets on the back of his leg.

Six-year-old Tristan testified
that while he was sitting on the living room floor with his brothers, “these
guys started shooting.”  Cyre, Tristan and his brothers went to another room;
they got on the ground; and Cyre called 911.  Tristan was transported to the
hospital by ambulance because he had been shot.

Eduardo Morales, also
known as “Recio,” testified that he has been a member of the “Mexican Mafia”
for twenty-seven years.  Morales explained that the Mexican Mafia is an
organization that engages in criminal activities.  Morales had previously been
to prison for burglary and possession of a controlled substance.

Morales stated that, on
the day of the shooting, Garcia and another member of the Mexican Mafia,
Anthony Gonzalez, picked him up.  According to Morales, the three men then went
to Jesse Garcia’s house, and Jesse told Morales that Raul Valencia had
“disrespected” the Mexican Mafia.  On cross-examination, Morales clarified that
Valencia was a member of the Mexican Mafia and that he had shot at other
members of the group.  Morales stated that the men then “briefed” him about the
plans for the crime, and Garcia instructed Morales to “take the blame” if they
were caught.

Morales claimed that the
men picked up weapons, arrived at the Segrest house, and then approximately
eleven or twelve men lined up in front of the house.[3]   Morales stated
that Garcia “put his hand up and when he put it down,” all of the men,
including Morales and Garcia, began firing their weapons.  Morales testified
that Garcia shot at the house with an “SKS,” a “[h]igh-powered weapon.” 
Morales stated that when the men stopped shooting, he was “hit” by a bullet. 
Morales believed that he was intentionally shot because he had been accused of
“snitching.”  Morales explained that another member of the group, Eriberto
Mendez, took him to the hospital in a green truck.

Morales admitted on
direct examination that he had mistakenly informed the police that Jimmy
Salinas, Alberto Casas, and Conrado Castillo were present at the scene of the
shooting.  On cross-examination, Morales emphasized, however, that he was wrong
about Castillo being present when the shooting occurred.

Tim Revis, a police
officer with the Corpus Christi Police Department, testified that, Morales
identified several individuals involved in the shooting including Eriberto
Mendez, Joe Angel Madero, Jose Gerardo Olvera, Anthony Aleman Gonzalez, Jesus
Garcia, Jr., Rudy Daniel Castro, and Garcia.  Subsequently, charges were
brought against those individuals.  Officer Revis also stated that he showed a
photo lineup to Morales and Castillo that included a picture of Garcia.  They
identified Garcia and charges were then filed against him.  When asked on
cross-examination, if he relied on the information provided by Castillo when he
decided to “charge anybody” with the shooting at Segrest, Officer Revis
replied, “Yes.”  Officer Revis then clarified that he relied on a combination
of what Castillo and Morales told him.

On cross-examination,
Officer Revis stated that, to the best of his knowledge, Castillo was not
present when the shooting took place.  Officer Revis testified that Castillo
told him he was not present at the shooting and that the information Castillo
gave him was not “firsthand” because “he was not at the scene.”[4]  Officer Revis
stated, “[S]ome of the information [Castillo] had was provided to him by
Maldonado and I believe others. . . .  [Castillo] had knowledge of the people
that personally told him they were there and involved.”

Officer Revis
acknowledged that Morales initially stated that Castillo was present.  Officer
Revis testified however, that when he showed Morales a photo lineup including a
picture of Castillo, Morales did not identify Castillo as being present at the
shooting.  Officer Revis explained that he then showed Morales a single
photograph of Castillo and Morales “indicated that was not the person that he
was referring to that he had the wrong name.”  Officer Revis testified that
Morales identified Garcia as a person who was present at the scene of the
shooting.

Castillo testified that
he is a member of the Mexican Mafia and that he has been convicted of several
crimes including “unauthorized use of a motor vehicle, failure to appear, and
aggravated assault.”  Castillo had recently pleaded guilty in federal court for
a crime involving crack cocaine.[5] 
Castillo stated that he was not present at the July 25, 2008 shooting that
occurred on Segrest.  According to Castillo, he was not asked to participate in
the shooting because “the majority of the people that were there were prospects,
new to the organization,” the shooting was in Nueces County, and Castillo was
an asset because he sold drugs and made money for the Mexican Mafia.

Castillo claimed that, on
the day of the shooting, a meeting was held at his house in Taft, Texas, at
approximately 3:00 p.m. to discuss a possible violation of the Mexican Mafia’s “rules
and regulations” at the shooting on Segrest.[6] 
Castillo recalled that Reynaldo Castillo, Jesse Garcia, Anthony Gonzalez, Paul
Michael, Jesse Dominguez, Gilbert Castro, Randy Aranda, and Garcia were in
attendance.  Castillo testified that at the meeting, Garcia, also known as
“Bird,” was “kind of actually bragging about [his involvement in the shooting
on Segrest] with a smirk on his face all the time . . . .”  Castillo claimed
that Garcia, “with a smirk on his face” said, “Yeah.  I—we shot down that
house.  I unloaded the whole clip.”  Castillo testified that Garcia told him he
used an AK-47 and an SKS to shoot at the house.  Castillo stated that Jesse
told him the reason for the shooting “was because Danny’s brother, also known
as Tick [(Valencia)] . . . had a shootout with him a day or a few days before
that.  Eventually, Tick was going around other Mexican Mafia members’ house[s]
and shooting at their houses.  So, that’s the main reason that he ordered [the
shooting].”

Castillo’s wife, Vanessa
Castillo, testified that on July 25, 2008, Castillo was with her “during the
day.”  Vanessa said that she and Castillo went to Wal-Mart to “get some stuff
for [her] girls and some stuff to make a barbecue.”  According to Vanessa,
“later that day,” Garcia, along with several other men, went to her house.  Vanessa
was not present when the men held their meeting.

II.         Accomplice Witness

By his first issue,
Garcia contends that the evidence was insufficient because the “only evidence
tending to connect [him] with the offenses was testimony from two accomplice
witnesses.”  Specifically, Garcia argues that Morales and Castillo were both accomplices
as a matter of law; therefore, the State failed to provide any evidence tending
to connect Garcia to the shooting on Segrest.  Garcia does not attack the
sufficiency of the evidence on any other grounds.

A.        Applicable Law

Pursuant to the code of
criminal procedure, “[a] conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed . . . .”  Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).  An
accomplice is a person who, acting with the required culpable mental state, participates
with the defendant before, during, or after the commission of a crime.  Paredes
v. State, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).  “The participation
must involve an affirmative act that promoted the commission of the offense with
which the accused is charged.”  Id.  A person who merely knew of the
offense and did not disclose it, or even concealed it is not an accomplice
witness.  Smith v. State, No. PD-0298-09, 2011 Tex. Crim. App. LEXIS 156,
at *34 (Tex. Crim. App. Feb. 2, 2011); Druery v. State, 225 S.W.3d 491,
498 (Tex. Crim. App. 2007).

“A State’s witness may be
an accomplice as a matter of law or as a matter of fact.”  Smith, 2011
Tex. Crim. App. LEXIS 156, at *34; Cocke v. State, 201 S.W.3d 744, 747
(Tex. Crim. App. 2006).  A witness is an accomplice as a matter of law if there
is no doubt that the witness acted with the required culpable mental
state and participated with the defendant before, during, or after the
commission of a crime.  See Smith, 2011 Tex. Crim. App. LEXIS 156, at
*38 (stating that “to be entitled to an accomplice as a matter of law
instruction, the evidence must leave no doubt that a witness is indeed an
accomplice as a matter of law”); see Druery, 225 S.W.3d at 498.  A
witness is an accomplice as a matter of law if “the witness is charged with the
same offense as the defendant or a lesser-included offense or when the evidence
clearly shows that the witness could have been so charged.”  Druery,
225 S.W.3d at 498 (emphasis added).

Unless there is no doubt
that the witness is an accomplice, the trial court has no duty to instruct the
jury that the witness is an accomplice as a matter of law.  See id.  When
there is conflicting evidence or the evidence is unclear regarding the witness’s
status as an accomplice, the matter is a question of fact left up to the jury
to decide.  Smith, 2011 Tex. Crim. App. LEXIS 156, at *35 (“When there
is doubt as to whether a witness is an accomplice (i.e., the evidence is
conflicting), then the trial judge may instruct the jury to determine a
witness’s status as a fact issue.”); Druery, 225 S.W.3d at 498-99.  “However,
as with an accomplice as a matter of law, there must still be some evidence of
an affirmative act on the part of the witness to assist in the commission of
the charged offense before such an instruction is required.”  Druery,
225 S.W.3d at 499.

B.        Accomplice as a Matter of Law

In this case, it is
undisputed that Morales was an accomplice as a matter of law.[7]  Therefore,
Morales’s testimony must have been corroborated by other evidence tending to
connect Garcia with the offense committed.  See Tex. Code Crim. Proc. Ann. art. 38.14.  Garcia contends that
the evidence was insufficient to corroborate Morales’s testimony because
Castillo was also an accomplice as a matter of law and there was no other
evidence tending to connect him to the offenses committed.  See id.  The
State counters that Castillo was not an accomplice as a matter of law.

At trial, Castillo stated
that he was a member of the Mexican Mafia and that after the shooting on
Segrest, the group held a meeting at his home to discuss the shooting.  Morales
admitted that he initially told the police that Castillo was present at the
shooting on Segrest.  However, Morales also stated that he was mistaken and that
Castillo was not present at the shooting.  Castillo testified that he was not
present when the shooting was committed.  Further, Vanessa testified that
Castillo was with her running errands and at home on the day of the shooting.

Garcia argues that
Castillo was an accomplice as a matter of law because “the Mexican Mafia
regularly engaged in drug sales, murder and aggravated assault, the crimes
alleged in the indictment were within the criminal contemplation of the
conspirators and Castillo is criminally responsible for them.”  Garcia cites no
authority, and we find none, supporting a conclusion that membership and
participation in a gang’s activities makes a witness an accomplice to all of
the crimes committed by the gang, even if the witness did not direct, or
participate in the act.  In fact, membership in a gang, without evidence that
the person participated or assisted in the commission of the crime, is not
sufficient to support a finding of accomplice status.  See Medina v. State,
7 S.W.3d 633, 641-42 (Tex. Crim. App. 1999) (finding “the following combined
evidence was sufficient to permit a rational jury to infer that [the witness]
was a party to the crime, and hence, raise[d] a fact issue as to [the
witness’s] accomplice status:  (1) [the witness’s] presence in the car with
appellant when the crime occurred, (2) evidence that the crime was a
gang-motivated crime, (3) [the witness’s] membership in the same gang as
appellant, and (4) [the witness’s] efforts to cover up the crime”).  Furthermore,
“complicity with an accused in the commission of another offense apart from the
charged offense does not make that witness's testimony that of an accomplice
witness.”  See Druery, 225 S.W.3d at 498.  Therefore, we cannot
conclude that gang membership alone or participating in other gang-related criminal
acts having nothing to do with the charged offense makes the witness an
accomplice as a matter of law to the charged offense.

It is undisputed that
Castillo was not charged with the same offense as Garcia or a lesser-included
offense.  See Druery, 225 S.W.3d at 498.  Moreover, the evidence
does not clearly show that Castillo could have been charged with the
offense committed.  See id.  Therefore, we conclude that Castillo was
not an accomplice as a matter of law.[8] 
See id.  We overrule Garcia’s first issue.

By his second issue,
Garcia contends that the trial court erroneously failed to instruct the jury
that Castillo was an accomplice as a matter of law.  Having already determined
that Castillo was not an accomplice as a matter of law, we also conclude that the
trial court was not required to provide an accomplice as a matter of law
instruction.  See Tex. Code Crim.
Proc. Ann. art. 36.14 (Vernon 2007) (providing that the trial court
shall deliver to the jury “a written charge distinctly setting forth the law
applicable to the case”); Druery, 225 S.W.3d at 497 (setting out that if
the witnesses were not accomplices as a matter of law or fact, there was no
error in the trial court’s jury charge lacking such an instruction).  We
overrule Garcia’s second issue.

C.        Accomplice as a Matter of Fact

By his third and fourth
issues, Garcia contends that the trial court’s jury instruction regarding
Castillo’s status as an accomplice witness as a matter of fact was erroneous.  Specifically,
he argues that the trial court’s definition of an accomplice was erroneous
because it did not state that the jury could consider Castillo’s actions after
the commission of the offense and that the trial court restricted the jury’s
application of the accomplice witness rule to only count one in the indictment.

In Druery, the
court of criminal appeals refused to consider appellant’s issues contending
“that the trial judge’s instruction to the jury regarding whether [the
witnesses] were accomplice witnesses as a factual matter was constitutionally
inadequate” because it concluded that the witnesses were not accomplices as a
matter of fact.  225 S.W.3d at 497-500.  The court stated, “if [the witnesses]
are not accomplices, then the trial judge’s instruction regarding accomplice
witnesses as a matter of fact was superfluous and did not harm [appellant].”  Id.
at 497.  The court explained that appellant’s claims rested “upon the threshold
issue of whether [the witnesses] were accomplices—either as a matter of law or
of fact—to the capital murder or a lesser-included offense of the capital
murder.”  Id.  The court then held that appellant’s “arguments
concerning accomplice witness instructions given to or not given to the jury
and concerning the application of the accomplice witness rule to the underlying
predicate felony offense [were] inapposite.”  Id. at 500.  Therefore, having
already concluded that Castillo was not an accomplice as a matter of law, we
will now determine whether Castillo was an accomplice as a matter of fact to
the offenses Garcia was charged with committing.  See id. at 497.  If
Castillo was not an accomplice as a matter of fact, then the trial court’s
instruction asking the jury to determine whether Castillo was an accomplice
witness as a matter of fact was and did not harm Garcia.  See id. at
497, 500.

Here, Morales admitted
that he initially told the police that Castillo was present at the shooting;
however, Morales told Officer Revis that he had given police the wrong name.  In
addition, Morales testified that he was mistaken when he said Castillo was
present.  Regardless, the mere presence of the witness at the scene of the
crime does not render the person an accomplice witness.  Druery, 225
S.W.3d at 498; McCallum v. State, 311 S.W.3d 9, 14 (Tex. App.–San
Antonio 2010, no pet.) (finding that there was no evidence that the witness
“participated” in the crimes committed by appellant and concluding that the
witness was not an accomplice as a matter of fact even though the witness was
present during the attack, concealed his knowledge of the crime from police,
and disposed of evidence).

Moreover, Morales did not
state that Castillo participated in the shooting or promoted, encouraged,
solicited, or aided in its commission.  See Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003) (providing
that under the law of parties, a person is a party to an offense if “acting
with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense”); Paredes, 129 S.W.3d at 536; Blake v. State, 971 S.W.2d
451, 455 (Tex. Crim. App. 1998) (en banc) (“A person is an accomplice if there
is sufficient evidence connecting him to the criminal offense as a blameworthy
participant.”).  On appeal, Garcia claims that Castillo “admitted” his “direct
participation in the crimes by providing transportation to a fleeing Joe
Maldonado”; however, at trial, no evidence was presented that Castillo provided
transportation to a fleeing Maldonado.  In fact, Castillo stated that he did
not give Maldonado a ride on the day of the shooting.  Therefore, Garcia’s
argument is without merit.

Castillo admitted that a
meeting was held at his house after the shooting to discuss whether the
shooters violated the rules of the Mexican Mafia.  However, this evidence is
not sufficient to prove that Castillo was an accomplice witness—it does not
prove that Castillo affirmatively assisted in the shooting on Segrest.  See Druery,
225 S.W.3d at 500 (providing that even assisting after a murder in the disposal
of a body does not transform a witness into an accomplice witness in a
prosecution for murder without evidence that the witness affirmatively assisted
in committing the offense).  Furthermore, the fact that Castillo admitted to
engaging in other criminal activities on behalf of the Mexican Mafia does not
make him an accomplice as a matter of fact.  See Druery, 225 S.W.3d at
498; Medina, 7 S.W.3d at 641-42.

The evidence is not
conflicting or unclear regarding Castillo’s status as an accomplice because
there was no evidence showing that Castillo committed an affirmative act in
order to assist or promote the shooting on Segrest.  See Druery, 225
S.W.3d at 499-500 (concluding that the witnesses were not accomplices as a
matter of fact even though appellant told the witnesses he was going to kill
the victim, neither witness warned the victim that appellant stated he was
going to kill him, the witnesses were present prior to and during the murder,
appellant gave each witness forty dollars that he took from the victim after he
committed the murder, one of the witnesses helped dispose of the body, and the
other witness assisted in disposing of the murder weapon); Kunkle v. State,
771 S.W.2d 435, 437-438, 441 (Tex. Crim. App. 1986) (en banc) (finding the
evidence failed to even raise a factual issue regarding whether the witness was
an accomplice even though the witness was present before, during, and after
commission of the murder and knew that:  (1) one of the accomplices had a gun
and had fired it into the air; (2) the codefendants planned to commit robbery;
(3) two of the accomplices used a gun to steal seven dollars from another
person immediately before robbing and killing the victim; and (4) the group
intended to steal from the murder victim).  Therefore, the trial court’s
instruction allowing the jury to determine whether Castillo was an accomplice
witness as a matter of fact and did not harm Garcia.  See Druery, 225
S.W.3d at 497 (refusing to consider appellant’s complaints regarding the
accomplice witness jury charge instruction because the witnesses were not
accomplices as a matter of fact); see also Cocke, 201 S.W.3d at 748 (“The
trial court is not required to give the jury an accomplice-witness instruction
when the evidence is clear that the witness is neither an accomplice as a
matter of law nor as a matter of fact.”).  In fact, such an instruction benefitted
Garcia because it required corroboration of Castillo’s testimony if the jury had
found that Castillo was an accomplice to the shooting.[9]  See Druery,
225 S.W.3d at 497-98 (explaining that appellant was benefitted by a superfluous
accomplice witness instruction, and, therefore, he could not have been harmed
by it).  Accordingly, we overrule Garcia’s third and fourth issues.

III.        Perjury

By his fifth issue,
Garcia contends that the State relied on perjured testimony in violation of his
due process rights; therefore, the trial court erroneously denied his motion
for new trial.  The State responds that Garcia failed to introduce evidence
that Castillo committed perjury at the motion for new trial hearing.

A.        Standard of Review and Applicable Law

We review a trial court’s
denial of a motion for new trial for an abuse of discretion.  Charles v.
State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).  “We do not substitute
our judgment for that of the trial court, but rather we decide whether the
trial court's decision was arbitrary or unreasonable.”  Id.  We view the
evidence presented at a motion for new trial hearing in the light most
favorable to the trial court’s ruling, and we presume all reasonable factual
findings that could have been made in support of the trial court’s ruling.  Id. 
“[A] trial court abuses its discretion in denying a motion for new trial only
when no reasonable view of the record could support the trial court's ruling.” 
Id.

“[T]he State violates a
defendant’s right to due process when it actively or passively uses perjured
testimony to obtain a conviction.”  Ex parte Castellano, 863 S.W.2d 476,
481 (Tex. Crim. App. 1993) (en banc).  If the State has actual or imputed
knowledge of the perjury, a violation occurs.  Id.  The burden to show
that the testimony used by the State was, in fact, perjured is on appellant.  Losada
v. State, 721 S.W.2d 305, 311 (Tex. Crim. App. 1986) (en banc) (citing Luck
v. State, 588 S.W.2d 371, 373 (Tex. Crim. App. 1979)).  A person commits
perjury if he acts with an intent to deceive and with knowledge of the
statement's meaning and makes a false statement under oath.  Tex. Penal Code Ann. § 37.02(a)(1)
(Vernon 2003).

B.        Discussion

Garcia argues that at the
hearing on his motion for new trial, he offered a transcript of Castillo’s
videotaped interview with police proving that Castillo committed perjury.[10]  The State
asserts that we should not consider the interview because it was not admitted
into evidence during the hearing on the motion for new trial.  We agree with
the State.[11] 
However, even if we could review the interview, Garcia has still failed to
prove that Castillo committed perjury.

Garcia generally argues
that “Castillo’s trial testimony is diametrically opposed to his denial in his
videotaped interview that the Segrest shooting was discussed, and is
perjurous.”  Garcia cites a portion of the interview wherein an unknown speaker
asked Castillo if a Mexican Mafia meeting was held the day after the Segrest
shooting.  Castillo responded that a meeting was held the next day to discuss
“finish[ing] off Tick.”  The unknown speaker then asked Castillo if the group
discussed the Segrest shooting at that meeting; Castillo replied, “Not really.”

Garcia claims that this
evidence proves that Castillo committed perjury because, at trial, Castillo
testified that the group discussed the Segrest shooting at a meeting where Garcia
admitted his involvement.  Therefore, Garcia argues, by stating that the group
did “not really” discuss the Segrest shooting, Castillo, in effect, denied that
any discussions about the Segrest shooting occurred.  Upon our review of the
record, it is obvious that during the videotaped interview, Castillo was describing
a meeting held the day after the shooting, and he was not referring to the
meeting that he testified at trial was held on the day of the shooting at his
home.[12] 
Thus, the trial court could have believed that there were two meetings—one held
the day of the shooting to discuss possible violations of the rules and
regulations and another one held the day after the shooting to plan
“finish[ing] off Tick.”[13] 
See Charles, 146 S.W.3d at 206 (“[A]n appellate court, in its review of
a trial court's ruling on a motion for new trial:  1) should apply a
deferential standard of review to the trial court's resolution of historical
facts; and 2) may rely upon implied findings of fact that are supported by the
record to uphold the trial court's ruling, even when the trial court is not
faced with expressly conflicting affidavits or testimony.”).  Therefore, viewing
the evidence in the light most favorable to the trial court’s ruling, we
conclude that this evidence does not establish that Castillo committed perjury
at trial.  See id.  The trial court did not abuse its discretion in
denying Garcia’s motion for new trial.  See id.   We overrule Garcia’s
fifth issue.

IV.       Conclusion

            We affirm the trial court’s judgment.

                                                                                                

                                                                                                ________________            ___
    

Rogelio Valdez

                                                                                                Chief
Justice

 

Do not publish. 

Tex. R. App. P. 47.2(b)

Delivered and filed the


10th day of March, 2011.

 









[1]
Officer Bruce Ward testified that the shooting was first reported at 1:21 p.m.





[2]
Conrado Castillo, a witness for the State, later testified that the group
wanted to kill Villarreal’s brother, Raul Valencia, also known as “Tick.”





[3]
On cross-examination, Morales explained that the group had found Valencia’s
black BMW parked in front of the house on Segrest.





[4]
Officer Revis stated that he interviewed Castillo on several occasions and that
only one of the interviews was videotaped.





[5]
When asked for what offense he had entered a guilty plea, Castillo replied,
“Control substance of crack cocaine,” and he did not elaborate.





[6]
Castillo explained that, according to the Mexican Mafia’s rules and
regulations, it is a “no-no” to injure innocent people and that the penalty for
violating the rule is death.





[7]
The trial court provided an instruction to the jury that Morales’s testimony
needed corroboration.





[8]
Garcia, citing a transcript of a police interview with Castillo, also argues
that the State “was specifically aware of Castillo’s complicity as an
accomplice.”  Garcia’s trial was held on October 20-21, 2009.  The transcript
was filed with the trial court on November 18, 2009.  This transcript was not
admitted at trial, and it was provided to the trial court after Garcia’s
trial.  Therefore, we may not consider it as evidence proving that Garcia was
an accomplice as a matter of law or a matter of fact.  See Ramirez v. State,
104 S.W.3d 549, 551 n.9 (Tex. Crim. App. 2003) (providing that the appellate
record cannot be supplemented with evidence not introduced during trial).





[9]
Garcia does not challenge the jury’s implied finding that Castillo was not an
accomplice as a matter of fact.





[10]
At the hearing on his motion for new trial, Garcia did not present any evidence
to be admitted by the trial court.  However, during argument, Garcia’s attorney
asked the trial court to review the transcript of a videotaped interview with
Castillo that was filed the same day as Garcia’s motion for new trial.





[11]
At the hearing, although Garcia told the trial court that he had filed the
transcript, there is nothing in the record showing that the trial court
actually reviewed the transcript before making its ruling.  See Wright
v. State, 178 S.W.3d 905, 916-17 (Tex. App.–Houston [14th Dist.] 2005, pet.
ref'd) (explaining that the appellate court could not consider a DVD attached
to motion for new trial because it was not introduced at the new trial
hearing); Ramirez, 104 S.W.3d at 551 n.9 (providing that the appellate
record cannot be supplemented with evidence not introduced during trial).





[12]
Garcia appears to suggest that during his videotaped interview, Castillo was
talking about the meeting held at his home on the day of the shooting.  We
disagree with this interpretation.





[13]
Moreover, the trial court could have found that Castillo’s statement that the
group did “not really” discuss the shooting is not inconsistent with stating that
there was a limited amount of discussion concerning the Segrest shooting.